# In the United States Court of Federal Claims

No. 09-502C
(E-Filed: October 27, 2009 Under Seal)
(Refiled: November 18, 2009)[1]

_____
                                          )
MEDICAL DEVELOPMENT                       )
INTERNATIONAL, INC.                       )
GOVERNMENT HEALTHCARE                     )          Pre-Award Bid Protest; Standard of
SERVICES,                                 )          Review; Whether Exclusion of
                                          )          Plaintiff from Competitive Range
                    Plaintiff,            )          Deprived Plaintiff of Standing; Failure to
                                          )          Demonstrate Error
          v.                              )
                                          )
THE UNITED STATES,                        )
                                          )
                    Defendant.            )
_____          )

Robert G. Barbour, McLean, VA, for plaintiff.  Timothy E. Heffernan, McLean, VA, of
counsel.

Jeffery D. Klingman, with whom were Tony West, Assistant Attorney General, Jeanne E.
Davidson, Director, Mark A. Melnick, Assistant Director, Commercial Litigation Branch,
Civil Division, U.S. Department of Justice, Washington, DC, for defendant.  William D.
Robinson, Federal Bureau of Prisons, Washington, DC, of counsel.

OPINION

This is a pre-award bid protest brought by Medical Development International, Inc.

_____
[1]This Opinion was filed under seal on October 27, 2009.  The court requested that if any
party believed that the October 27, 2009 Opinion contained protected material that should be
redacted before publication, that party shall, by motion filed on or before November 9, 2009 (that
date was extended at the parties' request, to November 16, 2009) request that such protected
material be redacted.  The court has received the Joint Motion to Redact Protected Materials
(Joint Motion) requesting redactions.  The court now GRANTS-IN-PART the Joint Motion and
publishes the Opinion as so redacted.  Redactions are indicated by [***].

Government Healthcare Services (MDI), an unsuccessful offeror in Solicitation COA-0003 (Solicitation) by the United States government acting through the Federal Bureau of Prisons (the government, defendant or BOP).  Complaint for Declaratory and Injunctive Relief (plaintiff's Complaint or Compl.) ¶¶ 1-4, 23.  BOP issued the Solicitation for this best value procurement on September 16, 2008, seeking proposals to provide comprehensive medical services at the Federal Correctional Complex in Coleman, Florida (FCC Coleman).  Id. at ¶ 4.  BOP announced its competitive range determination and MDI learned it was excluded from the competitive range on June 30, 2009.  Administrative Record (AR) 810.  On July 31, 2009, plaintiff filed its Complaint and its Motion for Preliminary Injunction (plaintiff's Motion for Preliminary Injunction or Pl.'s Mot. Prelim. Inj.).  At a status conference on August 4, 2009, the court ordered briefing to permit the court to address, at one time, the merits of the Complaint and plaintiff's entitlement to injunctive relief.  Order of August 6, 2009.

Plaintiff asserts that BOP abused its discretion and acted arbitrarily and capriciously by failing to evaluate proposals in accordance with the criteria described in the Solicitation.  Compl. ¶ 25.  MDI asserts that BOP's failure to evaluate the bids properly resulted in plaintiff's exclusion from the competitive range.  Id.

Specifically, MDI asserts that there was no objective basis for BOP's price determination and that the price determination was therefore arbitrary and capricious.  Id. at ¶¶ 25-27.  While the Solicitation required that prices remain firm only until April 1, 2009, AR 167, 200, the competitive range was not determined until June 30, 2009.  AR 810.  MDI asserts that BOP could not objectively determine prices after April 1, 2009, because prices were no longer firm after that date.  Compl. ¶ 26.  MDI asserts that, without firm prices, any determination of price was necessarily arbitrary and capricious because BOP had no objective prices on which it could rely.  Id. at ¶¶ 25-26.

MDI further asserts that BOP failed to balance price and non-price factors equally as required by the Solicitation.  Id. at ¶¶ 28-30.  Finally, MDI asserts that BOP improperly balanced price and non-price factors in a way that was unreasonable and arbitrary, resulting in plaintiff's exclusion from the competitive range.  Id. at ¶¶ 30-32.

Plaintiff requests that the court declare BOP's decision to exclude plaintiff from the competitive range erroneous and arbitrary.  Id. at ¶ 34(a).  MDI seeks to be reinstated among the offerors in the competitive range and to be included among offerors eligible to submit a "Best and Final Offer" for award of the contract.  Id. at ¶ 34(c).  Plaintiff also seeks "its bid preparation costs and costs of this Protest, including its attorneys fees, and, such other and further relief as is deemed just and proper."  Id. at ¶ 34(d)-(e).

2

Pursuant to the court's Scheduling Order of August 4, 2009, the government filed the Administrative Record (AR).[2]  Plaintiff filed a Motion for Judgment on the Administrative Record (plaintiff's Motion or Pl.'s Mot.) on August 21, 2009.[3]  Defendant filed its Motion for Judgment on the Administrative Record (defendant's Motion or Def.'s Mot.) on August 28, 2009.[4]

I.      Background

On September 16, 2008, BOP issued the Solicitation for an indefinite delivery/requirements-type contract with firm fixed unit prices to provide medical services to FCC Coleman.  AR 129, 162.  The contract is for one base year with four one-year renewal options at the unilateral discretion of the Government.  AR 139, 162.  The award would be based on a three-volume submission consisting of:  (1) a technical proposal; (2) a past performance proposal; and (3) a business or price proposal.  AR 167.  The Solicitation provides that BOP will award the contract to the bidder who offers the "best value to the Government" in accordance with the criteria set forth in the Solicitation.  AR 7.  The Solicitation advises offerors that there could be a limited competitive range determination prior to discussions or, alternatively, that BOP could make the award without discussions.  AR 170 ("Offerors are also advised that a contract award may be made without discussions . . . .").

Four offerors responded to the Solicitation:  MDI, [***], [***] and [***].  AR 810.  MDI submitted three separate proposals (MDI-A, MDI-B and MDI-C).  AR 202.1-337.  [***], [***] and [***] each submitted [***].  AR 338-608.

The Solicitation sets forth the criteria BOP would use in making the award.  AR 170-73.  The award will be made to the offeror whose bid is "in the best interest of the Government, price and other factors considered.  In this tradeoff process, non-price factors (when combined) are approximately equal to price."  AR 171.  Non-price factors include

_____

[2] On August 20, 2009, defendant filed an unopposed Motion Seeking Leave to Correct the Administrative Record (AR) and filed a corrected AR.

[3] Plaintiff's Motion for Judgment on the Administrative Record (plaintiff's Motion or Pl.'s Mot.) did not indicate under what rule it is seeking relief.  The court assumes that plaintiff intended to seek judgment on the AR pursuant to Rule 52.1(c) of the Rules of the Court of Federal Claims (RCFC).

[4] Defendant filed its Motion for Judgment on the Administrative Record (defendant's Motion or Def.'s Mot.) pursuant to Rule 52.1(c) of RCFC.  Def.'s Mot. 1.

technical criteria, past performance and the participation of small disadvantaged businesses (SDBs).  AR 4-7, 170-71.  "Technical criteria and past performance are of equal value.  SDB participation criteria is less significant than technical and past performance (when considered on an individual basis)."  AR 171.  Based on the parenthetical clause ("when considered on an individual basis") coming after the words "technical and past performance," the court understands the weight of SDB participation as an evaluation factor to be less than either technical or past performance.  The Solicitation further advises all offerors that price could be the determining factor between and among proposals that are considered to be equal under non-price factors.  AR 172 ("Offerors are advised that should the offerors' proposals be considered approximately the same or equal under non-price factors, price could be paramount in the selection decision.").

The Solicitation provides for a separate evaluation of each non-price factor including past performance, inclusion of SDBs and the technical proposal.  AR 4-6.  Past performance evaluations were reviewed and scored by the Contracting Officer (CO), Scott Sarayusa.  AR 58.  The CO assigned a rating [***] to each offeror based on the evaluations.  Id.  A [***] rating indicates the offeror's past performance [***] and [***].  AR 6, 58.  A [***] rating indicates that the offeror's past performance [***].  Id.  A [***] rating indicates that the offeror's past performance [***].  Id.  A [***] rating indicates that the offeror's past performance record [***].  Id.  An offeror with [***] receives a [***] rating.  AR 6.

The evaluation of past performance is based on "subjective assessment" and "is a matter of judgment."  AR 610.  A [***] rating would be given to an offeror that [***].  AR 6.  A [***] rating would be given to an offeror that [***].  Id.  A [***] rating would be given to an offeror that [***].  Id.  A [***] rating would be given to an offeror that [***].  Id.  Every offeror received a [***] for its past performance reviews except [***] which received a [***].  AR 809.

Proposals were also to be rated regarding the participation of SDBs.  AR 6.  The Solicitation provided that a [***] rating would be given to an offeror that [***].  [***] meets or exceeds the Bureau of Prisons' goal for subcontracting with SDBs, currently 6 percent [***].  Id.  A [***] rating would be given to an offeror that [***].  Id.  A [***] rating would be given to an offeror that [***].  Id.  All offerors received a [***] rating for level of SDB participation except [***], which received a [***] rating.  AR 807.

The Solicitation requires that an offeror provide certain health care services in eight categories.  AR 7.  Each offeror was required to propose its price for each of the eight categories.  Id.  The eight categories are:  inpatient facility services, outpatient facility

services, inpatient physician services, outpatient physician services, outpatient institution services (other physicians), outpatient institution services (optometrist), outpatient institution services (oral surgeon) and outpatient institution services (dietician).  Id.  Each offeror was required to list its price as a premium to or discount from the established Medicare rate for each service:  "price proposals will be calculated from the benchmark Medicare rate in the form of a discount from or premium to Medicare rates established by the Centers for Medicare and Medicaid services."[5]  AR 138.  In the evaluation process, the price proposal is worth approximately the same as non-price factors combined:  "non-price factors (when combined) are approximately equal to price" factors.  AR 171.  [***].  AR 7.  The Solicitation therefore provides two external benchmarks for the CO to use to determine the reasonableness of the offerors' prices:  [***] and Medicare prices.  AR 7, 138.  Out of a possible total of [***], the resulting price scores for each offeror are:  MDI-A:  [***], MDI-B:  [***], MDI-C:  [***], [***], [***], and [***].  AR 800-05.

The Solicitation requires that all offerors hold their prices firm for 120 days after the December 2, 2009 deadline for submissions of offers.  AR 167, 200.  The prices in the offerors' proposals were therefore firm until April 1, 2009.  AR 167, 200.  However, the competitive range determination was not made until June 30, 2009, three months after the offerors' firm prices had expired.  See AR 810.

The final component of the Solicitation was the evaluation of technical proposals.  AR 4.  Pursuant to the Solicitation, the CO assembled a Technical Evaluation Panel to review the technical proposal of each offer.  AR 56, 170.  The panel members were:  [***].  AR 55-56.  [***], was appointed chairperson.  AR 55-56.  Members of the panel [***].  AR 750-52, 759-61, 763-65, 777-79, 786-88, 794-96.  The panel then [***].  AR 744-49, 753-58, 766-76, 780-85, 789-93; see AR 59.  The evaluators were directed to [***].  AR 58-59.  At the [***].  AR 744-49, 753-58, 766-76, 780-85, 789-93; see AR 59.  [***].  AR 59.  [***]

[***]

AR 57-58.

Technical criteria included four sub-factors of equal importance that the evaluators were instructed to consider in making their determinations:  diversity of services, distance

---

[5] The pricing methodology section continues:  "[t]his structuring of the pricing methodology is not intended to be restrictive of any offeror; offerors need only to propose that percentage discount from or premium to the Medicare benchmark rate which will reflect the desired level of payment for the category of services rendered."  AR 138.

between FCC Coleman and proposed health care facilities, enhancements to the basic contract requirements, and accreditation status of the proposed facilities. AR 4. There was no technical requirement that offerors have contracts in place at the time they submitted bids. See AR 4. Accordingly, the status of an offeror's contracts with the health care facilities was not a criterion that members of the panel were directed to consider. See id. Regarding the accreditation of the health care facilities, the Solicitation stated a preference that facilities be accredited by the Joint Commission on Accreditation of Healthcare Organizations (Joint Commission). AR 134; see AR 486 (reciting the full name of the Joint Commission). However, the Solicitation permitted offerors to include in their proposals facilities that were accredited by "any other recognized accrediting body." AR 134. The Solicitation directed offerors to submit proof of accreditation for all health care facilities regardless of whether the health care facility was accredited by the Joint Commission or by a different accrediting body. Id.

Each member of the technical panel was directed to [***]. AR 57-58. [***] indicates [***] proposal that [***]. AR 4, 58. [***] indicates [***] proposal that [***]. Id. [***] indicates [***] proposal that [***]. Id. [***] indicates [***] proposal that [***].[6] AR 4, 59.

Each evaluator on the technical panel was to [***]. AR 4, 58. After each evaluator [***], the chairperson was to [***]. AR 59. The responsibility to [***] belonged to the chairperson, but all evaluators had the opportunity to [***]. AR 59-60. After [***], the chairperson was to [***]. AR 59. The CO was to [***]. AR 58.

MDI-A and MDI-B received ratings of [***]. AR 749-52, 758-61. MDI-C received [***]. AR 762-70. MDI-C is the only proposal that received a rating of [***], for its technical proposal. AR 763-65. [***] received [***]. AR 776-79. [***] received [***]. AR 785-88. [***] received [***]. AR 789, 794-96.

In making the competitive range determination, the CO was able to consider not only the [***], but also the [***]. AR 59. In addition to the [***]and the [***], the CO also weighed the past performance reviews, SDB participation and price evaluations. AR 59-60, 810. All of the non-price factors – past performance, technical proposal and SDB participation – when combined, are approximately equal to the price. AR 171. Although the documentation of the competitive range determination is not described in the Solicitation in language similar to the description of the documentation of the trade-off

---

[6] [***]

AR 4.

between price and non-price factors to be made in determining the final award, the AR contains a record of the tradeoff, prepared by the CO.  AR 810.  The record of the trade-off process contains the ratings each offeror received and the CO's impression of each offeror.  AR 810-11.

 In a document dated June 30, 2009, the CO summarized the offerors' past performance, SDB, and technical evaluation scores and the offerors' prices as part of the competitive range determination.  AR 809-10.  The CO determined MDI's pricing to be [***]."  AR 810.  The CO determined that [***].  Id.  The CO also determined that the offers of [***] and [***] were "technically acceptable, offer [***] pricing, and would only require minor revisions to be eligible for award."  Id.

BOP's [***] contains a [***], describing [***].  AR 59-60.  Only [***] are involved in this bid protest.  See generally Pl.'s Mot. passim.  The [***] brought the process to the competitive range determination that is at issue in this case.  [***] come into play once a competitive range is determined.  The [***] are as follows:

[***]

AR 59-60 (typeface altered).  The [***] do not describe in detail how the competitive range is determined, simply noting [***] that if discussions are determined to be necessary, that the CO will determine the [***] competitive range, i.e., the most highly-rated proposals considered for the award [***].  AR 59.

Based on the CO's decision, only [***] and [***] remained under consideration after the competitive range determination.[7]  BOP notified [***] and MDI on June 30, 2009, that their proposals would be eliminated from consideration.  AR 812-16.

On July 31, MDI filed this protest.  The court held oral argument on the parties' motions on September 15, 2009.  See Oral Arg. Tr.  For the following reasons, plaintiff's Motion is DENIED and defendant's Motion is GRANTED.

II.    Legal Standards

---

[7] Medical Development International, Inc. Government Healthcare Services (MDI) filed a protest with the Government Accountability Office (GAO) on July 9, 2009.  Pl.'s Mot. 11.  GAO dismissed the protest on July 20, 2009 on the grounds that MDI failed to provide any information supporting its allegation that the decision to eliminate its proposal from the competitive range was based on price.  Id.

A.      Bid Protest Standard of Review

The Tucker Act, as amended by the Administrative Dispute Resolution Act (ADRA), 28 U.S.C. § 1491(b) (2006), confers jurisdiction on this court

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1).  The court reviews a bid protest action under the standards set forth in the Administrative Procedure Act (APA), 5 U.S.C. § 706 (2006).  28 U.S.C. § 1491(b)(4); NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004).  The APA provides that an agency's decision is to be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); see also Bannum, Inc. v. United States (Bannum), 404 F.3d 1346, 1351 (Fed. Cir. 2005); Galen Med. Assocs., Inc. v. United States (Galen), 369 F.3d 1324, 1329 (Fed. Cir. 2004); Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa), 238 F.3d 1324, 1332 (Fed. Cir. 2001); Advanced Data Concepts, Inc. v. United States (Advanced Data Concepts), 216 F.3d 1054, 1057 (Fed. Cir. 2000).

Under the arbitrary or capricious standard of review, an agency's decision must be sustained if it has a rational basis.  Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983).  "The arbitrary and capricious standard applicable here is highly deferential.  This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." Advanced Data Concepts, 216 F.3d at 1058 (citing Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974)).  In particular, the reviewing court may not substitute its judgment for that of the agency.  Citizens to Preserve Overton Park, Inc. v. Volpe (Overton Park), 401 U.S. 402, 416-20 (1971), abrogated in part by Califano v. Sanders, 430 U.S. 99, 105 (1977) (abrogating Overton Park by recognizing that the APA is an independent grant of subject-matter jurisdiction).  In a "best value" procurement, greater deference is given to the agency than "if the contract were to have been awarded on the basis of cost alone."  Galen, 369 F.3d at 1330 (citing E.W. Bliss Co. v. United States (E.W. Bliss), 77 F.3d 445, 449 (Fed. Cir. 1996)).

Under the APA standards, as applied in Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), and now under the ADRA, "a bid award may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement

procedure involved a violation of regulation or procedure." Impresa, 238 F.3d at 1332. To succeed, a disappointed bidder alleging a lack of rational basis must show the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Challenges to decisions on the basis of a violation of a regulation or procedure "must show a clear and prejudicial violation of applicable statutes or regulations." Impresa, 238 F.3d at 1333 (internal quotation and citation omitted).

In any case, in order to prevail in a bid protest, a "protestor must show not only a significant error in the procurement process, but also that the error prejudiced [the protestor]." Data General Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996); see also Alfa Laval Separation, Inc. v. United States (Alfa Laval), 175 F.3d 1365, 1367 (Fed. Cir. 1999). If the court finds that there is no error, there is no prejudice and BOP's decisions must be left undisturbed. Alfa Laval, 175 F.3d at 1367 (requiring that a protestor establish "significant, prejudicial error" to prevail in a bid protest). The first step is to demonstrate error; to show that the agency acted in an arbitrary and capricious manner, without a rational basis or contrary to law. See Bannum, 404 F.3d at 1351. The next step is to determine whether the error was prejudicial. See id. "[B]ecause the question of prejudice goes directly to the question of standing, the prejudice issue must be reached before addressing the merits." Labatt Food Serv. Inc. v. United States, 577 F.3d 1375, 1378 (Fed. Cir. 2009) (quoting Info. Tech. & Applications Corp. v. United States (Info. Tech.), 316 F.3d 1312, 1319 (Fed. Cir. 2003)). "Non-prejudicial errors in a bid process do not automatically invalidate a procurement." Id. at 1380. The plaintiff must demonstrate both that an error occurred and that such error was prejudicial. Data General Corp., 78 F.3d at 1562.

In the context of a post-award bid protest, "the plaintiff must demonstrate 'substantial prejudice' by showing that there was a 'substantial chance' it would have been awarded the contract but for the agency's error." Weeks Marine, Inc. v. United States (Weeks Marine I), 79 Fed. Cl. 22, 35 (2007) (internal citation omitted), aff'd in relevant part, 575 F.3d 1352 (Fed. Cir. 2009) (Weeks Marine II). However, when a plaintiff brings a pre-award protest, the plaintiff need show only "that an unreasonable agency decision 'created a non-trivial competitive injury which can be redressed by judicial relief.'" Weeks Marine II, 575 F.3d at 1363 (quoting WinStar Commc'ns, Inc. v. United States (WinStar), 41 Fed. Cl. 748, 763 (1998)). The different standards for pre-award and post-award relief result from the fact that the post-award "substantial chance" test "envisions a review of the contract award or bid evaluation process to determine what might have occurred if the government had not erred." Id. (quoting WinStar, 41 Fed. Cl. at 763 n.9). By contrast, in a pre-award solicitation-based protest, "the evaluation of offers has not even begun." Id. (quoting WinStar, 41 Fed. Cl. at 763 n.9). The key difference is the level of factual development at the time of the protest. The Federal Circuit recently concluded

that the "non-trivial injury" test, as articulated by the Court of Federal Claims in <u>WinStar</u>, strikes the appropriate balance in pre-award cases. <u>Weeks Marine II</u>, 575 F.3d at 1363.

Here, MDI lodged its protest before the contract was awarded, but after the competitive range had been determined. <u>See</u> Compl ¶¶ 19, 23. Plaintiff was not included in the competitive range, and its exclusion prompted this protest. <u>See</u> AR 810; Compl. ¶ 34. MDI is not seeking to upset an award, because no award has yet been made. However, there has been "a bid evaluation process" which the court can review to determine whether the government erred. <u>See</u> AR 810. This case is therefore distinguishable from both post-award protests and pre-award, solicitation-based protests, where the unsuccessful bidder is challenging an aspect of the procurement prior to the evaluation of the offers. MDI is challenging neither the terms of a solicitation in a pre-award protest nor an actual award in a post-award protest.

The factual record in this case is fully developed regarding the disputed issue: the competitive range determination. Notably, however, BOP's Solicitation did not require, and the CO did not compile, a written record of detailed balancing. <u>See</u> AR 7 (requiring [***], but not [***]).

The competitive range determination and the process the CO used to make the determination has been completely recorded to the extent required by the Solicitation. <u>See</u> AR 59-60. The court has sufficient evidence to determine, based on the record submitted, whether the competitive range determination was the result of a prejudicial error. The court finds that because this post-competitive range challenge to the competitive range determination is sufficiently analogous to a post-award challenge to award, the "substantial chance" test is the appropriate standard under which to evaluate plaintiff's claim. "Prejudice is a question of fact." <u>Bannum</u>, 404 F.3d at 1353. To establish prejudice, the plaintiff must prove that "there was a 'substantial chance' it would have received the contract award but for the errors." <u>Id.</u> (quoting <u>Info. Tech.</u>, 316 F.3d at 1319). Only if plaintiff is able to demonstrate that BOP's determinations were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A), does the court consider whether MDI had a "substantial chance" of receiving the award but for the error. <u>Bannum</u>, 404 F.3d at 1351, 1353.

B.     Standing

Bid protests can be brought only by interested parties. <u>Am. Fed'n of Gov't Employees v. United States</u>, 258 F.3d 1294, 1302 (Fed. Cir. 2001). Under the ADRA, an "interested party" is "limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the

contract." Id.  In the context of a post-award protest, the Federal Circuit has further defined "interested party" as a party having "greater than an insubstantial chance of securing the contract if successful on the merits of the bid protest." Info. Tech., 316 F.3d at 1319.  In the context of a post-award protest, "[t]he term 'interested parties' excludes those who did not submit proposals, bidders who withdrew from a solicitation and offerors who were not competitively ranked for award." Microdyne Outsourcing, Inc. v. United States (Microdyne), 72 Fed. Cl. 230, 232 (2006) (citing Impresa, 238 F.3d at 1334).

In this case, all of MDI's proposals were excluded from the competitive range.  AR 815.  In the context of a post-award protest, exclusion from the competitive range has been found to preclude a bidder from challenging the later award.  Microdyne, 72 Fed. Cl. at 232.  However, MDI is not challenging an award that has been made, but rather its pre-award exclusion from the competitive range.

If MDI's exclusion from the competitive range deprives it of pre-award standing to challenge the competitive range determination, the exclusion could have the frustrating result of depriving MDI completely of any possibility of judicial relief.  Even if MDI's exclusion from the competitive range could deprive it of standing to challenge a later award, it does not, in this court's view, deprive it of standing to make a pre-award challenge to the competitive range determination.  Cf. Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002) (including "offerors whose direct economic interest would be affected by the award of he contract" as interested parties).  In the factual circumstances of this case, where MDI has shown that one of its proposals, MDI-C, was recognized as having [***], the court finds that MDI is an interested party with a direct economic interest sufficient to establish standing.

C.      Motions for Judgment on the Administrative Record

Rule 52.1 of the Rules of the Court of Federal Claims (RCFC) provides for judgment on the administrative record "[w]hen proceedings before an agency are relevant to a decision in a case" before the court.  RCFC 52.1(a).  RCFC 52.1 does not address the standards and criteria to be applied in cases decided pursuant to RCFC 52.1 because "[t]he standards and criteria governing the court's review of agency decisions vary depending upon the specific law to be applied in particular cases."  RCFC 52.1 Rules Comm. Note (2006).  Accordingly, the standards of review and burdens of proof and persuasion are set by the terms of the applicable substantive law, including, in this case, statutory and case law discussed above in Part II.A.

A court reviewing a best value procurement agency action must be highly deferential, and the agency that made the determination in question is presumed to have

acted in a reasonable and rational manner.  Advanced Data Concepts, 216 F.3d at 1058; Fort Carson Support Servs. v. United States (Fort Carson), 71 Fed. Cl. 571, 586 (2006).  A plaintiff must rebut the presumption of a rational basis in order to upset the agency's findings.  L-3 Commc'ns EOTech, Inc. v. United States, (L-3 Commc'ns), 87 Fed. Cl. 656, 664 (2009); see Advanced Data Concepts, 216 F.3d at 1050.  In determining whether an agency acted rationally, the court is particularly deferential to the agency's technical evaluation.  L-3 Commc'ns, 87 Fed. Cl. at 664.  "In particular, the evaluation of proposals for their technical excellence or quality is a process that often requires the special expertise of procurement officials, and thus reviewing courts give the greatest deference possible to these determinations."  Fort Carson, 71 Fed. Cl. at 586 (citations omitted).

"Contracting officers are not obligated by the APA to provide written explanations for their actions."  Impresa, 238 F.3d 1337.  Moreover, agency actions are entitled to a presumption of "regularity."  Id. at 1338.  There is a "strong presumption that government officials act correctly, honestly, and in good faith when considering bids."  Savantage Fin. Servs., Inc. v. United States (Savantage), 86 Fed. Cl. 700, 703-04 (2009).

The court will not second-guess the ratings given by procurement officials that involve discretionary determinations.  E.W. Bliss, 77 F.3d at 449.  The question for the court is not whether the agency is correct or whether the court would have reached the same conclusion as the agency did, but whether there was a reasonable basis for the agency's actions.  Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) ("If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations.").

III.   Discussion

Before considering the merits of MDI's various arguments, the court summarizes

the offerors' scores in the chart below.

|  | MDI-A | MDI-B | MDI-C | [***] | [***] | [***] |
|---|---|---|---|---|---|---|
| Technical | [***] | [***] | [***] | [***] | [***] | [***] |
| Past Performance | [***] | [***] | [***] | [***] | [***] | [***] |
| SDB | [***] | [***] | [***] | [***] | [***] | [***] |
| Price | [***] | [***] | [***] | [***] | [***] | [***] |

All offerors earned a [***] rating for past performance, with the exception of [***] which received a neutral rating.  AR 809.  MDI-A and MDI-B received [***] technical ratings and MDI-C received a [***] technical rating.  AR 744-70, 809.  Both [***] and [***] earned a [***] rating for their technical proposals.  AR 771-79, 809.  [***] earned a rating of [***] for its technical proposal.  AR 780-88, 809.  All proposals earned [***] for their proposed SDB participation except [***], which earned a [***] rating.  AR 807, 809.  The final price evaluation scores were as follows, with [***] being the highest score possible: MDI-A:  [***], MDI-B:  [***], MDI-C:  [***], [***], [***]; and [***].  AR 800-05, 809.


    MDI submitted three separate proposals for consideration.  AR 202.1-337.  Each proposal offered [***].  AR 202.1-337.  Each of MDI's proposals was scored separately and, of the three proposals submitted by MDI, MDI-C received [***].  See AR 770, 809.  In its Motion, MDI focused its arguments on the exclusion of MDI-C from the competitive range.  See Pl.'s Mot. passim.  MDI argues that the MDI-C proposal should have been included in the competitive range, emphasizing that it was the only proposal to receive a [***] for its technical proposal.  Id. at 2-3.  Among the non-MDI offerors, [***] was excluded from the competitive range and MDI makes almost no mention of [***] in its arguments.  See id. passim.  As does MDI, the court will focus on BOP's evaluation of proposals by MDI-C, [***] and [***].

    The CO prepared a two-page competitive range determination, outlining the scores that each offeror received and his balancing.  AR 810-11.  The CO set out MDI's scores in each category for each of its three proposals.  AR 810.  The CO determined that MDI-C received [***] for its technical proposals and for its past performance.  Id.  The CO concluded by noting that "[***]."  Id.  The CO noted [***]'s scores and concluded that "[***]."  Id.  After listing the scores that [***] and [***] received, the CO concluded that "the competitive range [would] consist of [***] and [***].  Their proposals have been

13

determined technically acceptable, offer [***] pricing, and would only require minor revisions to be eligible for award." Id.

MDI asserts that BOP acted arbitrarily and unreasonably resulting in five errors. First, BOP failed to perform an "objective evaluation" to determine if the prices were reasonable, specifically because it failed to evaluate the prices before the expiration of firm price offers. Pl.'s Mot. 16-20.  Second, BOP failed to determine the reasonableness of the offered prices. Id. at 16-18.  Third, BOP erroneously scored [***]'s past performance [***] instead of [***].  Id. at 26-27.  Fourth, BOP erroneously scored [***]'s and [***]' technical evaluations [***] instead of [***].  Id. at 28-32.  MDI argues that the evaluation process ignored technical concerns about [***] articulated by evaluator [***] and that two errors in BOP's technical evaluation of [***] contributed to MDI's exclusion from the competitive range:  first, that the health care facilities used by [***] are too far away from FCC Coleman, id. at 29, and second, that only one of the health care facilities used by [***] is accredited, id.  Finally, MDI asserts that BOP improperly and irrationally weighed price and non-price factors in making the competitive range determination. Id. at 20-25.  MDI asserts that the correction of errors in BOP's evaluation of the proposals would result in MDI's inclusion in the competitive range.  See id. at 16-32.  The court addresses each issue in turn.

A.     Pricing

1.     Firm Price

The Solicitation required that all offerors hold their prices firm for 120 days after the December 2, 2009 deadline for submissions of offers.  AR 167, 200.[8]  The prices in the offerors' proposals therefore remained firm until April 1, 2009.  Id.  The competitive range determination was not made until June 30, 2009, three months after the firm prices of the offerors had expired.  AR 810.  Contract formation requires that an offer must be definite enough to demonstrate the mutual intent of the parties to contract with one another.  Tree Farm Dev. Corp. v. United States, 585 F.2d 493, 499-500 (Ct. Cl. 1978); Russell Corp. v. United States, 537 F.2d 474, 482 (Ct. Cl. 1976); see Restatement (Second) of Contracts § 24 (1981) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to the bargain is invited and will conclude it.").

An offer need not include a firm price and a firm price is not necessary to form a

---

[8] Amendment 2 of the Solicitation extended the deadline for submission of offers until December 2, 2008.  AR 200.

contract if the offer is sufficiently definite to establish that both parties intend to contract. Tree Farm Dev. Corp, 585 F.2d at 500; see Russell Corp., 537 F.2d at 482. The issue for this court is whether BOP's reliance on [***]'s and [***]' prices for the purpose of determining the competitive range was rational even though the prices were no longer firm. Was it arbitrary or capricious for BOP to have treated [***]' and [***]'s offers as sufficiently definite to show their intent to be bound by BOP's acceptance despite the expiration of firm offers?

The Solicitation stated that "[a] written notice of award or acceptance of an offer, mailed or otherwise furnished to the successful offeror within the time for acceptance specified in the offer, shall result in a binding contract without further action of either party." AR 176. However, the "time for acceptance" is not specified in the Solicitation, or elsewhere in the AR. Moreover, [***] required the CO to [***]. AR 60. The CO could reasonably be expected to use the Final Proposal Revisions to confirm prices with the offerors included in the competitive range.[9] Even after the award has been made, ambiguity about the price "will prevent the formation of a contract only if it is significant enough to prevent a meeting of the minds." NVT Techs. Inc., 73 Fed. Cl. at 464 (finding that both parties understood plaintiff's proposal to be a final proposal notwithstanding the watermark "DRAFT" that appeared on one of two submitted forms).

Even if it were the court's view that it would have been better practice for BOP to confirm the prices of the offerors prior to making its competitive range determination, a failure to follow a practice the court finds preferable does not make an action arbitrary or irrational. See generally E.W. Bliss, 77 F.3d at 449. Given the short amount of time that had lapsed between the Solicitation and determination of the competitive range, the familiarity of MDI, [***] and [***] with the government procurement process and the requirement that parties in the competitive range submit a Final Proposal Revision, the CO was reasonable in his determination that the offers were sufficiently definite to be included in the competitive range. Absent a finding that BOP's action was arbitrary, capricious or lacking a rational basis, there was no error and there can be no prejudice to plaintiff.

2.      Reasonableness of offerors' prices:  [***] and MDI

The government may use a variety of techniques to ensure a fair and reasonable price. 48 CFR § 15.404-1(b)(2) (2006). "Normally, competition establishes price

---

[9] In reaching its legal conclusion, the court notes, but does not rely on, the observation that in the 2009 economic climate, it is beyond improbable that a competitor selected for the competitive range would take the opportunity presented by a final proposal revision to raise its prices.

reasonableness. Therefore, when contracting on a firm-fixed-price or fixed-price with economic price adjustment basis, comparison of the proposed prices will usually satisfy the requirement to perform a price analysis, and a cost analysis need not be performed." 48 CFR § 15.305(a)(1) (2006). The evaluation provisions state:

> The contracting officer is responsible for evaluating the reasonableness of the offered prices. The analytical techniques and procedures described in this section may be used singly or in combination with others, to ensure that the final price is fair and reasonable.
>
> . . . .
>
> The Government may use various price analysis techniques and procedures to ensure a fair and reasonable price. Examples of such techniques include, but are not limited to, the following: (i) Comparison of proposed prices received in response of solicitation. Normally, adequate price competition establishes price reasonableness.

48 C.F.R. 15.404-1(a)(1), (b)(2) (2006) (citation omitted).

The Solicitation required that all prices be submitted in terms of a discount from or a premium to the Medicare rate for that service. AR 7, 130. The Medicare rate is an objective standard against which the contracting officer can compare prices and can determine reasonableness.[10] The CO was able to compare prices of the offerors to the Medicare baseline and to each other. See AR 797-805. This comparison of the offerors' prices to each other, without more, would be sufficient to establish the reasonableness of the offered prices under the FAR. See 48 C.F.R. 15.404-1(b)(2). Offerors were directed by the Solicitation to list all prices in terms of the premium to or discount from the Medicare reimbursement rate for the service. AR 7, 138. Variations of the offerors from the established Medicare rate therefore served as an additional way for the CO to determine the reasonableness of the prices. AR 138, 171, 797-805.

---

[10] The AR also contains an [***] with [***] for the comprehensive medical services needed at the Federal Correctional Complex in Coleman, Florida (FCC Coleman). AR 8-16. There is no record of comparison between or among the offeror's prices and the [***]. However there is no requirement that the Contracting Officer (CO) document his use of [***]. In this case, the CO may or may not have used [***]. However, comparison of offerors' prices to each other and to the Medicare base price were more than sufficient to establish the reasonableness of the prices.

16

MDI asserts that the determination by the government that MDI's prices were [***]" was irrational. Pl.'s Mot. 16-17. Its principal basis for the assertion is that, once prices were no longer firm, there was no objective standard upon which the CO could base such a determination, id. at 17, and that without firm prices to serve as an objective standard, MDI asserts, any conclusions were necessarily arbitrary and capricious. Id. This argument has been found unavailing by the court. See supra Part III.A.1.a.

[***] the maximum number of points available in each pricing category will be allotted to the offeror proposing the lowest price. Each higher price thereafter will be awarded a proportionate number of points [***]. AR 7. The Solicitation directed offerors to "adhere strictly to the pricing methodology required by the solicitation." AR 171. Each offeror was therefore required to submit its price proposal broken down by cost for each category as the price related to the Medicare benchmark.[11] AR 7, 138. Offerors were

---

[11] The price proposal was scored out of a possible [***] points, allocated among eight different sub-categories, broken down by the cost for each year of the contract. AR 7, 798-99. Each subfactor was assigned a certain number of points based on its importance. AR 7. Impatient Facility Services pricing was worth a total of [***] points, [***] points for each contract year. Id. Outpatient Institution Services (Other Physicians) pricing was worth a total of [***] points, [***] points for each contract year. Id. Outpatient Facility Services pricing was worth a total of [***] points , [***] points for each contract year. Id. Inpatient Physician Services pricing was worth a total of [***] points, [***] points for each contract year. Id. Outpatient Physician Services pricing was worth a total of [***] points, [***] points for each contract year. Id. Outpatient Institution Services (Optometrist) pricing was worth a total of [***] points, [***] points for each contract year. Id. Outpatient Institution Services (Oral Surgeon) pricing was worth a total of [***] points, [***] points for each contract year. Id. Outpatient Institution Services (Dietician) pricing was worth a total of [***] point, [***] points for each contract year. Id. [***] Id. [***]. AR 797-805.

The Solicitation sought bids for a five-year contract, a base year and four option years. AR 139, 162. [***] broke down the maximum number of price points to be awarded in each of the eight required categories [***]. AR 7. The government calculated the "[***]" correctly for the first five categories: Inpatient Facility Service, Outpatient Institution Services (Other Physicians), Outpatient Facility Services, Inpatient Physician Service and Outpatient Physician Services. Id. These five categories are collectively worth [***] out of a total of [***] possible price points. Id.

The government incorrectly calculated the "[***]" in the remaining three categories: Outpatient Institution Services (Optometrist), Outpatient Institution Services (Oral Surgeon) and Outpatient Institution Services (Dietician). Id. In these three categories, the government divided

directed not to deviate from the outlined pricing methodology.[12]  See AR 171.  An offeror

---

the number of total points by [***] instead of by [***].  See AR 7.  Outpatient Institution Services (Optometrist) pricing was worth a total of [***] points and should have been worth [***] points per contract year.  Instead it was listed, and calculated, as [***] points per contract year.  AR 7, 800-05.  Outpatient Institution Services (Oral Surgeon) pricing was worth a total of [***] points and should have been worth [***] points per contract year.  Instead, it was listed, and calculated, as [***] points per contract year.  AR 7, 800-05.  Outpatient Institution Services (Dietician) pricing was worth a total of [***] point and should have been worth [***] points per contract year.  Instead, it was listed, and calculated, as [***] points per contract year.  AR 7, 800-05.

The government used the "[***]" figure to calculate the [***] and therefore this mistake affected both the [***], see AR 7, and the calculations by the government, see AR 800-05.  The government consistently, albeit incorrectly, used the "[***]" numbers from the [***] to calculate the score for each price proposal.  AR 800-805.  Consequently, every offeror was affected by this mistake.  See id.  This mistake was apparent on the [***], AR 7, and neither party brought the mistake to the court's attention.  Given the relatively low weight of these three categories, the uniform application of the incorrect weighting to every offeror's price proposal, the inclusion of the mistake [***], and the failure of any party to raise this issue in its briefs or during oral argument, the court will not attempt to correct this mistake at this time.

[12] MDI asserts that [***]' prices were unreasonably low, and that the Bureau of Prisons (BOP) acted irrationally when it accepted [***]' prices.  Pl.'s Mot.34-35.  MDI proposes a statistical analysis that, it asserts, demonstrates that [***]' prices are unreasonably low and should have been discarded.  Id. at 34-36.  This statistical analysis is not required by the Solicitation, and would in fact be inappropriate under the terms of the Solicitation that limits comparison to Medicare baseline prices and to other offerors' prices.  The court is unpersuaded that the statistical exercise advocated by MDI is necessary or appropriate, and instead considers how the evaluation of prices was in fact conducted by BOP.

MDI further asserts that its [***] in previous contracts.  Pl.'s Mot. 18.  MDI included [***].  AR 628-29.  MDI's claim [***].  AR 628-29; Pl.'s Mot. 18.  MDI asserts that BOP should have taken [***] into account in making the competitive range determination and that BOP failed to do so.  Pl.'s Mot. 18.  This criticism ignores the terms of the Solicitation.  The Solicitation explicitly limits price consideration to discounts from or premiums to Medicare reimbursement prices.  AR 7, 138.  [***]the CO shall ensure that proposals are evaluated based solely on the evaluation criteria contained in the solicitation [***].  AR 2.  It would have been inappropriate under the Solicitation for BOP to taken [***].  MDI did not, as it might have, protest the terms of the Solicitation.  Because the Solicitation expressly limited price consideration, it was appropriate for the CO to disregard [***].  AR 7.  Even if it were viewed as proper for BOP to consider [***], which, given the terms of the Solicitation, it is not, the

who deviated from the pricing methodology would receive a score of zero for that item. AR 171.  The purpose of these restrictions was to permit [***]comparison of their price with the competing prices.[***] AR 7.  If such [***] comparison [***] could not be made, the offeror received a score of zero.[13]  AR 7, 171.

The information contained within the AR sufficiently demonstrates that the CO did not act arbitrarily or abuse his discretion in making his determinations concerning pricing. The FAR lists price comparison, the method used by the CO, as a preferred method of price evaluation.  48 § CFR 15.404-1(b).  Comparison among and between the offerors' prices is sufficient to determine the reasonableness of the offerors' prices.  See id.

Further, the CO is presumed to have the necessary background and is presumed to exercise his duty with care.  Savantage, 86 Fed. Cl. at 703-04.  While there is no information in the AR concerning the CO's specific experience or resume, there is no requirement that such information be included in the AR.  The lack of information in the AR regarding the CO's specific experience is not sufficient to overcome the presumption of care and competency.  See id.  The comparison of the offerors' prices to each other and to Medicare prices coupled with the presumption that the CO fulfilled his duty with appropriate care and based on appropriate expertise, see id., is sufficient to support the CO's characterization of MDI's prices as [***] and [***]' prices as [***].  The court finds the actions of the CO had a rational basis.  Because MDI has not proved that BOP's determination was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A), MDI cannot establish that it suffered any prejudicial effect.

---

competitive offers contained [***].  The proposals of  [***] and [***] both address the need to [***] in order to [***].  AR 440-41, 523-24.

The Solicitation made clear that prices would be evaluated using Medicare rates as an objective benchmark.  AR 7.  MDI's assertions related to statistical analysis and [***] are inappropriate under the terms of the Solicitation.  They were not and should not have been taken into account in making the competitive range determination.

[13] The [***] comparison [***] of prices among and between the offerors and to the Medicare baseline is apparent upon looking at the [***] in the AR.  AR 797-805.  The offerors' price for each contract year for each pricing category is written out in terms of the Medicare baseline, e.g., [***].  AR 798-99.  Then the [***].  AR 800-05.  The "[***]" is [***], which yields the "score" for each category.  AR 800-05; see supra note 11.  The [***] to get each offeror's overall price score.

B.      [***]'s Past Performance Rating

[***] received a [***] rating for its past performance.  AR 810.  MDI asserts that [***] should have received a [***] rating.  Pl.'s Mot. 26-27.  As described in Part I, the rating guideline for past performance has two separate criteria:  the evaluator must look at the predominant numerical ratings the offeror received, and the evaluator must also consider the percentage of references that would recommend the offeror for additional awards.  AR 611.  [***] percent of the responses ranked [***] as a [***] (out of 4), a score that indicates that "[***]."  AR 695-709.  [***] percent of the responses ranked [***]'s past performance as a [***], a score that indicates that [***]."  Id.  The remaining [***] of the responses ranked [***]'s past performance as a [***], indicating "[***]."  Id. All of the references indicated that they would recommend [***] for additional contracts. AR 612.

The categories for past performance review direct the CO to score the offeror based on the [***].  AR 611.  [***].  See AR 695-709.  The CO gave [***] a score of [***], even though [***] had not "[***]" as was required [***] in order to receive a score of [***].  BOP argues that a score of [***] was appropriate because all of the references would recommend [***] for additional contracts.  Def.'s Mot. 29.  The [***] ratings for past performance are based on an offeror's having both the required predominant numeric rating and the required percentage of references that would recommend the offeror for additional contracts.

Here, [***] did not receive a [***] rating of [***].  Of course, [***] did not receive a [***] rating of [***]3, either, making [***]'s past performance, viewed in the strictest interpretation of the terms of the Solicitation, not deserving of a [***], either.  In the circumstances, BOP broke the "tie" by looking to the percentage of references that would recommend [***] for additional contracts.  Given the limitation of the [***] rating system, this decision does not appear to the court to be irrational.  The court finds that the CO's determination that [***]'s past performance was deserving of a [***] rating was neither arbitrary nor capricious.  Because MDI has not proved that BOP's determination was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A), MDI cannot establish that it suffered any prejudicial effect.

C.      Evaluation of [***]'s and [***]' Technical Proposals

1.      The Process

The technical proposal of each offeror was evaluated by three panel members, and then, after [***], given a [***].  AR 58-60.  Each evaluator [***].  AR 58.  A rating of

[***] indicated a proposal had [***].[14]  Id.  [***] did not indicate that a proposal was [***].  Id.  [***] proposals were rated [***].[15]  Id.  A rating of [***] indicated that the proposal was [***].  Id.

The evaluation procedure allowed each evaluator to [***].  Id.  The [***] was made by [***], after [***].  Id.  [***] AR 59.  The process allowed each evaluator to [***].  Id.

Panel member [***] disagreed with the [***] for [***] and with the [***].  AR 42.  MDI supports its argument that [***] was rated incorrectly by pointing to an email from [***] to [***] in which [***] states "that [***] was not technically acceptable . . . ."  Pl.'s Mot. 31; see AR 42.  This email was apparently sent in reply to an email by [***], the technical evaluation chairperson, stating that the CO was considering making the award to [***] with no further discussions.  AR 43.  [***] was the only evaluator who [***].  AR 42.  Even after he [***] agreed, after a short email exchange with [***], that if [***] had contracts in place it would be technically acceptable.  Id.  Notably, whether or not the offeror had contracts in place is not one of the four sub-factors to be considered in the technical evaluation.  See AR 4.

The chairperson was directed to [***].  AR 57-61.  The technical performance evaluation is meant to be [***].  Id.  The opportunity for each evaluator to [***].  Id.  [***] appears to have disagreed with the other panelists, but the court does not view a disagreement as a fact undermining [***] particularly where, as here, the disagreement appears to be based on a criticism of a perceived deficiency in a technical matter that was not included in the evaluation criteria.[16]  See AR 56, 58.  However desirable it may be for [***], [***]'s disagreement  with the [***] does not make the rating irrational or arbitrary.

2.      [***]' Technical Rating

[***]' technical proposal received [***].  AR 771-76.  Plaintiff asserts that [***] should have received a [***] rather than a [***].  Pl.'s Mot. 30-32.  On May 19, 2009, the

---

[14] A [***] rating "[***]."  AR 4.

[15] A [***] rating "[***]."  AR 4.

[16] The [***]did not eliminate the [***] from the record.  In making the competitive range determination, the CO had access to the [***]as well as the [***].  AR 57-61.  The record of the technical evaluation also contains comments made after [***] made [***].  [***]wrote on May 21 that "[***] was not technically acceptable, [because] they did not have agreements with the hospitals or providers."  AR 42.

CO emailed [***] to alert [***] to the possibility that he might make the award to [***] without discussions.  AR 43.  [***] emailed all the evaluators on May 20, 2009, to confirm that [***] was technically acceptable.  AR 43.  [***] responded that he found [***] to be "not technically acceptable [because it] did not have agreements with the hospitals or providers."  AR 42.  In response, [***] points out that "MDI did not have agreements in place when they bid 5 years ago" but has provided good service during the life of the contract.  Id.  [***] wrote back, agreeing that if [***] is able to provide service without interruption, it could be acceptable.  Id.

The Solicitation required technical proposals be judged on four criteria.  AR 4.  Whether the offeror had contracts in place at the time it submitted its bid was not one of the criteria.  See id.  Even if [***] did not have contracts in place when it submitted its offer, that was not a criteria on which the technical proposal should have been evaluated and is not a reason to find the CO's decision arbitrary.

[***] was one of the two evaluators who rated [***]' technical proposal as [***].  [***]'s objections to [***]' proposal centered on a concern that was not properly before the Technical Evaluation Panel under the terms of the Solicitation.  [***], the other evaluator who rated [***], made no comments about the state of its contracts.  AR 778.  Most of [***]'s comments were positive regarding [***]' technical proposal.  [***]'s comment section states that the proposal provides an "[e]xcellent variety of community hospitals."  Id.  [***] also noted that the "proposed hospitals will meet the complex needs for inpatient services."  Id.  [***] noted that [***] included [***], the closest community hospital to FCC Coleman.  Id.

The third evaluator, [***], rated [***]' technical proposal [***].  AR 779.  Based on the [***], assigned [***]' technical proposal a score of [***].  AR 776.

MDI asserts that because [***] received [***], its [***] should have been [***] rather than [***].  However, BOP used a [***].  AR 4.  MDI provides no substantive support for its allegation that [***] was scored incorrectly under the terms of the Solicitation.  Moreover, [***] reflects a concern with a matter that should not have been considered under the technical evaluation criteria.  The [***]of the technical proposal was based on [***].  AR 4.  The court cannot find that BOP acted irrationally or arbitrarily when it gave [***] a [***] rating for its technical proposal.  Because MDI has not proved that BOP's determination was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A), MDI cannot establish that it suffered any prejudicial effect.

3.      [***]'s Technical Rating

[***] received a score of [***] for its technical proposal, based on three individual scores of [***] and [***]. AR 780-88. Plaintiff asserts that [***] should have received a [***] rating rather than a [***] rating. Pl.'s Mot. 28-30. [***] included [***] health care facilities as part of its technical proposal. [***] of these health care facilities were accredited by the Joint Commission. AR 783. The [***] health care facility listed in [***]'s technical proposal was accredited by the Florida Agency for Health Care Administration, Division of Health Quality Assurance (Florida Agency for Health Care). AR 489. [***] of the health care facilities accredited by the Joint Commission include [***] and [***] hospitals. [***] hospital is [***] miles away from FCC Coleman and [***] hospital is [***] miles away from FCC Coleman. AR 788.

The distance of the hospitals from the prison was one of the factors the evaluators were to consider in making the evaluation. AR 4. One of the panel members, [***], viewed the distances from FCC Coleman to [***] hospitals as a weakness based on the view that the distance limited the benefit these hospitals could provide to FCC Coleman. AR 787. MDI asserts that the inclusion of [***] hospitals should have negatively affected [***]'s score more than the [***] indicates it did. Pl.'s Mot. 28-30. However, [***] was the only evaluator who expressed the view that the distance of these [***] hospitals may negatively impact their usefulness. See AR 786, 788. Furthermore, MDI's proposals A and B included [***] hospitals and both received a score of [***] for their technical proposals, the same rating that [***] received. AR 749, 758, 785.

MDI also states that [***]'s proposal included "[***] accredited hospital." Pl.'s Mot. 29. This assertion is simply wrong. In order to arrive at this characterization, MDI first eliminates [***] hospitals from [***]'s proposal because of their distance from FCC Coleman. Id. at 28. MDI then eliminates a [***] hospital saying that it "did not have proof of accreditation." Id. at 29. This is incorrect. The [***], the hospital MDI claims is unaccredited, is in fact accredited by the Florida Agency for Health Care as an Ambulatory Surgical Center. AR 489. It is not accredited by the Joint Commission, a factor evaluators were directed to consider in their ratings. AR 4, 780-88. In fact, all [***] of the health care facilities [***] includes in its technical proposal are accredited: [***] of the [***] health care facilities proposed by [***] are accredited by the Joint Commission, AR 485-87, and the [***] hospital is accredited by the Florida Agency for Health Care, AR 489.

Moreover, the Solicitation expressly permits offerors to submit bids that include health care facilities that are accredited by bodies other than the Joint Commission. AR 134. As directed by the Solicitation, [***] provided proof of accreditation for all [***] health care facilities that it used in its proposal. AR 485-89. Both the distance and accreditation of the health care facilities was discussed by the members of the technical evaluation panel and considered by the CO.

23

The court cannot find that BOP acted irrationally or arbitrarily when it gave [***] a [***] rating for its technical proposal.  Because MDI has not proved that BOP's determination was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A), MDI cannot establish that it suffered any prejudicial effect.

D.      Balancing of Price and Non-Price Factors

MDI asserts that BOP balanced price and non-price factors improperly when the CO determined the competitive range.  Pl.'s Mot. 20-25.  MDI-C was the only proposal to receive a [***] rating for its technical proposal.  Id. at 22; see AR 763-70.  MDI asserts that [***] was improperly scored as [***] for its past performance, and that [***] should have been rated [***].  MDI also asserts that if [***]'s past performance is changed to reflect the score of [***] which MDI contends that [***] should have received, then MDI-C would have received higher rankings than [***] on both its technical and past performance evaluations.  Pl.'s Mot. 24-25.  MDI asserts that its higher scores for its technical proposal and past performance proposal should have overcome the lower scores it received for its price proposal, with the foregoing corrections resulting in its inclusion in the competitive range.  Id.  Given its higher scores in non-price categories, MDI claims that its exclusion from the competitive range was arbitrary, a result of improper balancing of price and non-price factors.

The court disagrees that the ratings of [***] and [***] were erroneous.  That leaves only the fact that, in one of the non-price evaluation factors – its technical proposal – MDI-C received a [***] rating while [***] and [***] received [***] ratings.[17]  AR 810.  The Solicitation provided the following description of how the factors were to be weighed in evaluating the best value determination on which the ultimate award would be based:

> In the determination of best value, non-price factors (when combined) are approximately equal to price.  Technical criteria and past performance will receive equal consideration.  Small disadvantaged business participation is less significant than technical and past performance (when considered on an individual basis).  Offerors will be notified that should the proposals be considered approximately the same or equal under the non-price factors, price could be paramount in the selection decision.

---

[17] [***] received a Small Disadvantaged Business (SDB) rating of [***] compared to MDI-C's and [***]'s ratings of [***].  AR 810.  Plaintiff notes but does not argue for the importance of MDI-C's higher rating for SDB participation.  See Pl.'s Mot 16-32.

24

AR 7.  MDI-C earned [***] for its price proposal.  AR 802.  This price score was [***] points and [***] points lower than [***]' and [***]'s price scores respectively.  See AR 803, 805.

The Solicitation states that the contract it will be awarded based on the best value to the government with price and non-price factors weighted approximately equally.  AR 7.  MDI asserts that because the CO was considering awarding the contract to [***] if its technical proposal was "acceptable," price and non-price factors were not weighed appropriately.  Pl.'s Mot. 23.  MDI asserts that its rating of [***] for past performance and [***] for its technical proposal should have been enough to overcome pricing perceived as superior by the CO.  See id. at 22, 24-25.  It is clear that the CO had before him all of the evaluation materials and considered them.  AR 809-11.  The CO determined "that the competitive range consist[s] of [***] and [***].  Their proposals have been determined technically acceptable, offer [***] pricing, and would require only minor revisions to be eligible for award."  AR 810.

There is no requirement under the terms of the Solicitation that the CO provide any further written explanation for the competitive range determination.  See Impresa, 238 F.3d at 1337.  In this case, the CO did in fact provide a short summary of the balancing that took place, and such balancing is entitled to a presumption of regularity.  See id. at 1338; Savantage, 86 Fed. Cl. at 703-04.  The CO determined that MDI-C's higher score for its technical proposal was insufficient to offset its significantly lower price scores.  See AR 810.  The technical score was only one of three non-price factors, which together were equal to price.  AR 171.  The court cannot find that the CO lacked a rational basis when he determined that MDI-C's higher technical rating was incapable of overcoming the significantly lower rating for its price proposal.  The CO's determination that the technical differences between MDI-C and [***] and [***] were insufficient to overcome the weakness of MDI-C's price proposal cannot be viewed as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A); see AR 810.  Because there is no error, there can be no prejudice to plaintiff.

IV.    Conclusion

For the foregoing reasons, plaintiff's Motion is DENIED and defendant's Motion is GRANTED.  Because defendant's motion is granted, all outstanding motions for relief by plaintiff are MOOT, including, without limitation, the relief sought in filings with the following docket numbers:  1, 3, 20 and 23.  The Clerk of Court shall enter judgment for defendant.  No costs.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge